UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND and THE NEW YORK
CITY AND VICINITY CARPENTERS LABOR
MANAGEMENT AND COOPERATION FUND, by
MICHAEL J. FORDE and PAUL O'BRIEN,
as TRUSTEES,

        Plaintiffs,

-against-

B&A INTERIORS, LTD,

        Defendant.
------------------------------------------------------------------X

AFFIDAVIT IN OPPOSITION
TO MAIN MOTION AND
IN SUPPORT OF CROSS-
MOTION

STATE OF NEW YORK   )
                            ) ss.:
COUNTY OF KINGS    )

ALEX CAPERNA, being duly sworn, deposes and says:

1. I am the sole officer and shareholder of the Defendant, B&A INTERIORS, LTD, and make this affidavit of my own personal knowledge, except as to matters hereinafter alleged to be upon information and belief, and as to those matters, I believe them to be true.

2. I make this Affidavit in Opposition to the Plaintiffs' motion, brought on by Order to Show Cause, which seeks to enter judgment against the Defendant Corporation as a result of an

alleged default in answering the Plaintiff's complaint, which seeks to enter judgment on an arbitration award made on default in appearance thereon; and in Support of the Defendant's Cross-Motion to vacate both the Defendant's default in pleading in the instant action and the Defendant's Default in appearing at the Arbitration, upon the grounds hereinafter set forth at length herein.

3. For the sake of clarity, I have addressed each of the aspects of this application under separate point headings, which identify each of the matters upon which I am offering testimony or documents to support same.

## BACKGROUND INFORMATION

4. Defendant, B&A INTERIORS, LTD., was originally incorporated in New York on December 8, 1981 by myself and my then partner, Dennis Olker, who actually caused the corporation to be formed. Mr. Olker's interest in B&A INTERIORS, LTD. was bought out by me in 1992.

5. For the first year of its existence, Defendant, B&A INTERIORS, LTD., operated out of premises located at 2027 West 5th Street, Brooklyn, New York, which was the address used as the Corporation's business address for service of process with the Secretary of State of New York.

6. In or about late 1983, Defendant, B&A INTERIORS, LTD., relocated to its present premises, to wit, 1556 - 62 Street, Brooklyn, New York.

7. From and after 1983, Defendant, B&A INTERIORS, LTD., filed its tax returns and otherwise held itself out as doing business at 1556 - 62 Street, Brooklyn, New York.

8. Indeed, the Order to Show Cause upon which the Plaintiff seeks to enter default judgment, was mailed to Defendant, B&A INTERIORS, LTD., in an envelope addressed to it at 1556 - 62 Street, Brooklyn, New York.

Page 2 of 11

9. Unfortunately, it appears that neither I nor my former partner ever advised the Secretary of State of the change in address for Defendant, **B&A INTERIORS, LTD.**, which apparently continues to use 2027 West 5th Street, Brooklyn, New York, as the Corporation's address for service of process.

10. I was made aware of this prior to my execution of this Affidavit by the Defendant Corporation's attorney, who furnished me with a copy of the information available on the Secretary of the State of New York's web site which lists the former address, a true, correct and complete copy of which is annexed hereto as **Exhibit 1** and made a part hereof.

## DEFAULT IN APPEARING

11. Defendant, **B&A INTERIORS, LTD.**, defaulted in appearing in this action not because of any neglect, but because it never received timely notice of the commencement of the within action.

12. That this is so can be shown for the Exhibits annexed to Plaintiff's moving papers.

13. **Exhibit B** to Plaintiff's moving papers includes a copy of the Summons issued to commence the action. It is addressed to Defendant, **B&A INTERIORS, LTD.**, at 1556 - 62 Street, Brooklyn, New York.

14. However, **Exhibit C** to Plaintiff's moving papers is an Affidavit of Service of the Summons and Complaint on the Secretary of the State of New York, pursuant to Section 306 of the Business Corporation Law.

15. Any notice given by the Secretary of the State, proof of which was not annexed to Plaintiff's moving papers, would have been mailed to the Defendant Corporation at the old address indicated in **Exhibit 1** hereto. As the relocation of the Defendant Corporation took place more than

Page 3 of 11

25 years ago, any forwarding order with the US Postal Service would have long since expired.

16. As heretofore noted, the Plaintiff's moving papers, having been mailed to the Defendant Corporation at its present address, enabled me to timely oppose Plaintiff's motion and seek the relief hereinafter particularized.

## BASIS FOR *VACATUR* OF DEFAULT

17. I am advised by the Defendant Corporation's attorney that in order to vacate a default in appearing, it is necessary to show that the default was unintentional and that there is a meritorious defense to the Plaintiff's complaint.

18. For the reasons heretofore set forth at length, I believe I have explained why the default in appearing was unintentional, the Corporation simply never received notice in time to respond.

19. For the reasons set forth at length below, I believe the Defendant Corporation is possessed of a meritorious defense to the Plaintiff's complaint.

20. Defendant, **B&A INTERIORS, LTD**,” has always been engaged in manufacturing custom, hand made, high end furniture for contractors who install same in home renovations. Although at one time it was a highly popular and successful business, because of the presently high cost of fabricating such furniture, and the availability of a wide array of much cheaper, mass produced furniture, the business has steadily diminished over the past several years. Accordingly, although **B&A INTERIORS, LTD**,” has always employed union carpenters, and timely and accurately paid all payroll and associated costs for same, its payroll has likewise steadily diminished over the past several years.

21. Some time in 2006, Defendant, **B&A INTERIORS, LTD**,” received a notice that the

Page 4 of 11

New York District Council of Carpenters wished to make an audit of the Corporation's payroll.

22.  Defendant, **B&A INTERIORS, LTD.**, produced its books and records to the auditors, and in or about October, 2006, received a copy of the auditor's report, which claimed a deficiency of $10,492.71.

23.  The audit report was supported, in part, by documents entitled "NYDCC Fringe Benefit Hourly Report," and "NYDCC Fringe Benefit Deficiency," which in summary fashion allege a total of 28 hours of deficiency in contributions for two employees, Aubrey E. Jacobs and Paul Tropea. A true correct and complete copy of both documents is annexed collectively hereto as **Exhibit 2** and made a part hereof.

24.  The audit report was also supported, in part, by a documents entitled "NYDCC Audit Hours by Week Ending Date," which makes a detailed comparison of the payroll records and audit findings with respect to Defendant, **B&A INTERIORS, LTD.**'s weekly payrolls from July 18, 2002 through January 27, 2006, iterating each employee in the periods covered and showing extensions of precisely how any alleged deficiency was determined. A true correct and complete copy of this document is annexed hereto as **Exhibit 3** and made a part hereof.

25.  By examining **Exhibit 3**, I was able to easily ascertain that the alleged 28 hours of deficiency in contributions for Aubrey E. Jacobs and Paul Tropea were asserted, with respect to the former, for the week ended November 19, 2004 [see page 5 of **Exhibit 3**, second entry from bottom] and, with respect to the latter, for the week ending March 18, 2005 [see page 6 of **Exhibit 3**, second entry from bottom.]

26.  Armed with that detail, I was likewise able to compare both of these asserted deficiencies to the Defendant Corporation's payroll records and monthly reports filed with the New

Page 5 of 11

York District Council of Carpenters, from which it may be shown that the alleged deficiencies are erroneous.

26. Annexed hereto collectively as **Exhibit 4** and made a part hereof, are copies of Defendant, **B&A INTERIORS, LTD.**'s Monthly Remittance Reports for the period December 21, 2004 through March 31, 2005, and the Union Wage Calculation for Mr. Paul Tropea for the only week he worked in that period, to wit, the one ended March 11, 2005.

27. As can easily bee seen from the Monthly Remittance Reports in **Exhibit 4**, Defendant, **B&A INTERIORS, LTD.**, had no payroll whatsoever for the period December 21, 2004 through February 28, 2005 [**Exhibit 4**, first page]; and, payroll for the period March 4, 2005 through March 31, 2005, solely for the week ended March 11, 2005, in which Mr. Tropea worked a total of 35 hours. [**Exhibit 4**, second page, third line] contributions for which to the New York District Council of Carpenters were made. The hours of employment for Mr. Tropea during this period, tie directly to those set forth on the Union Wage Calculation for Mr. Paul Tropea for the week ended March 11, 2005 [**Exhibit 4**, third page]

28. It is expressly stated on the Monthly Remittance Report that there was "No Work" in the week ended March 18, 2005 [**Exhibit 4**, second page, fourth line]

29. Accordingly, the assertion in the audit report to the effect that an additional 21 hours of contributions on behalf of Mr. Tropea for the week ended March 18, 2005, is due, is utterly without merit, or basis in any payroll records of Defendant, **B&A INTERIORS, LTD.**

30. Similarly, annexed hereto collectively as **Exhibit 5** and made a part hereof, are copies of Defendant, **B&A INTERIORS, LTD.**'s Monthly Remittance Report for the period October 29, 2004 through December 24, 2004, and the Union Wage Calculation for Mr. Aubrey E. Jacobs for

Page 6 of 11

the week he worked that ended on November 19, 2004.

31. As can easily bee seen from the Monthly Remittance Report in **Exhibit 5**, Defendant, **B&A INTERIORS, LTD.,** paid Mr Jacobs for 28 hours of work for the week that ended on November 19, 2004, [**Exhibit 5**, first page, fourth line] contributions for which to the New York District Council of Carpenters were made. The hours of employment for Mr. Jacobs during this period, tie directly to those set forth on the Union Wage Calculation for Mr. Jacobs [**Exhibit 5**, second page.]

32. Accordingly, the assertion in the audit report to the effect that an additional 7 hours of contributions on behalf of Mr. Jacobs for the week ended November 19, 2004 is due, is equally utterly without merit, or basis in any payroll records of Defendant, **B&A INTERIORS, LTD.,** as they clearly show he only worked 28 hours in that week, not the 35 alleged in the audit report.

33. On the basis of the foregoing, I verily believe that Defendant, **B&A INTERIORS, LTD.,** has a complete defense to these two (2) alleged deficiencies.

34. I am equally certain that had the balance of the New York District Council of Carpenters' claim been documented with the detailed claims set forth in the NYDCC Audit Hours by Week Ending Date, for the entire audit period, I would likewise be able to refute the additional deficiencies asserted — unfortunately, and without explanation by the auditors, the balance of the audit report contained only summarized assertions of deficiencies for the period between July 1, 2000 and December 31, 2001.

35. Annexed hereto collectively as **Exhibit 6** and made a part hereof, are copies of the "NYDCC Fringe Benefit Audit Deficiency," the period between July 1, 2000 and December 31, 2001, which allege an additional 691.5 hours of deficiency, without the New York District Council

Page 7 of 11

of Carpenters, or their auditors, having annexed a corresponding "NYDCC Audit Hours by Week Ending Date," from which I could identify the specific payrolls with which to refute this conclusory allegation.

36.    As the books and records submitted to the auditors contained the same types of records for all periods audited, I could not understand why the auditors were able to provide the specificity they did in the "NYDCC Audit Hours by Week Ending Date" for **all** of the periods they audited.

37.    By letter dated October 24, 2006, I communicated this precise complaint to the New York District Council of Carpenters Benefits Funds, and requested being furnished with the appropriate detailed quarterly reports so as to be able to trace the balance of the alleged discrepancies. A true, correct and complete copy of same is annexed hereto as **Exhibit 7** and made a part hereof.

38.    Instead of supplying me with the requested detail, I instead received a Notice of Intention to Arbitrate.

39.    In response to same, I again wrote the New York District Council of Carpenters Benefits Funds, by letter dated February 6, 2007, and reiterated my request for detailed information regarding the specific weeks when the alleged deficiencies accrued, indicating that without such detail, any arbitration would be a waste of everyone's time, but also indicating my intention to appear at the Arbitration to defend against the claimed deficiencies. A true, correct and complete copy of same is annexed hereto as **Exhibit 8** and made a part hereof.

40.    For the reasons heretofore set forth at length, I believe I have shown why Defendant, **B&A INTERIORS, LTD.**, is possessed of a meritorious defense to the Plaintiff's asserted

deficiencies. In both instances where the Plaintiff furnished sufficient detail to enable the Defendant Corporation to identify the precise basis for the alleged deficiency, the Defendant Corporation's records clearly refute the asserted deficiency. As Plaintiff has, for whatever reason, asserted the balance of its asserted deficiency in bulk, and refused to supply the Defendant Corporation with sufficient detail to permit it to defend against these assertions, it should not be permitted to profit from its own obduracy.

## DEFAULT IN APPEARING AT ARBITRATION

41. I likewise received no reply from the New York District Council of Carpenters Benefits Funds in response to my letter of February 6, 2007.

42. I acknowledge receipt of a notice dated January 19, 2007 from Robert Herzog, advising that the requested arbitration would take place on February 13, 2007.

43. Unfortunately, in calendaring same, I noted it for February 20, 2007, and did not discover my error until after the scheduled arbitration took place.

44. I respectfully allege this failure to appear was unintentional, the result of honest mistake, and not in any way intended to delay or avoid the proceeding. I believe for the reasons set forth in this Affidavit, and the Exhibits annexed hereto, that the Plaintiffs' claims are utterly without merit, and I have, on behalf of the Defendant Corporation acted promptly to assert its denial of the accuracy of the alleged deficiencies and expressed my preparedness to attend the arbitration to document those deficiencies, to the extent the available records permitted me to.

45. Nor did I fail to take action upon discovering my default in appearing.

46. I received a copy of the Arbitrator's Opinion and Award in the mail in late February 2007.

47. Immediately upon receipt of same, I retained, on behalf of the Defendant Corporation, the services of Richard S. Bonfiglio, Esq., who on March 13, 2007 wrote to the Plaintiffs' counsel, apprising them of the reason for my non-appearance at the Arbitration, and requesting their consent to vacate the Arbitration Award entered on default, in exchange for the Defendant Corporation's payment of the Arbitrator's fee for the date I failed to appear. A copy of that letter is annexed to Mr. Bonfiglio's Affirmation which is given in Opposition and Support to the Motion and Cross-Motion, which Affirmation I have read and am familiar with.

48. As related in Mr. Bonfiglio's Affirmation, a response to his letter was not had until May 24, 2007, at which time the proffered solution was not *vacatur* of the Arbitration Award, but, rather, an offer to conduct yet another audit.

49. As the Plaintiffs have already audited all of the periods which are inn controversy in this matter, and have demonstrated and ability to articulate with precision some of the basis for the alleged deficiency, I do not believe they need to conduct another audit at my expense, when they need only to furnish the Defendant Corporation with the same detailed documentation of their alleged deficiencies for all of the periods they audited. Simply put, the same records that enabled the auditors to allege a deficiency in bulk, should be available in the detailed format of the NYDCC Audit Hours by Week Ending Date, without the need for a further audit. As this detail had been requested on several occasions and provision of same would permit the Defendant Corporation to interpose a defense, I saw no need to accept the offer to spend my time participating in a second audit, and so advised Mr. Bonfiglio.

50. I was likewise advised by Mr. Bonfiglio, in June of 2007, that upon the Plaintiffs' threatened commencement of an action to confirm the Arbitration Award, application could be made

Page 10 of 11

to vacate same in that proceeding, for the reasons heretofore set forth at length.

51. For the reasons heretofore equally set forth at length, although the Plaintiffs did commence the threatened action to confirm the Arbitration Award, I never received timely notice of same and therefore defaulted in appearing in and opposing same.

52. I am advised by Mr. Bonfiglio, that this Court has the inherent power to vacate both the Defendant Corporation's failure to answer the complaint in this action and to vacate my default in appearing at the Arbitration, which relief, for the reasons heretofore set forth at length, I respectfully request be granted. I have reviewed the proposed Answer, Affirmative Defenses and Counter-Claim that has been annexed to Mr. Bonfiglio's Affirmation and believe same to be the answer that would have been interposed had the Defendant Corporation received timely notice of the commencement of the within action.

53. No prior request for the relief sought herein has been made to this or any other Court within this State or in the United States.

**WHEREFORE**, for all of the foregoing reasons, your deponent respectfully requests that the Plaintiffs' Motion be denied in all respects, that the Defendant Corporation's Cross-Motion be granted in all respects and that the Defendant Corporation have such other, further and different relief as to this Court may seem just, proper and equitable in the premises.

ALEX CAPERNA

Sworn to me before me
this 11 day of September, 2007.

Notary Public

RICHARD S. BONFIGLIO
Notary Public - State of New York
No. 02BO5050520
Qualified in Kings County
My Commission Expires Nov. 13, 20__